IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )
                                   )      Case No. 2:06-cr-73
         -vs-                      )
                                   )
STEVEN CARTIER,                    )
                                   )
                    Defendant.     )
                                   )

## SENTENCING MEMORANDUM OF THE COURT

Defendant Steven Cartier is charged with eleven counts related to his producing, possessing, and receiving child pornography.  On April 19, 2007, Cartier conditionally pled guilty to all eleven counts.  On September 13, 2007, Cartier was sentenced.  This memorandum explains the Court's analysis in reaching Cartier's sentence.

## I.  Ex Post Facto

Generally, the ex post facto clause prevents the application of a guideline that has increased the penalty for an offense committed in the past.  United States v. Carter, 490 F.3d 641, 643 (8th Cir. 2007).[1]  The Government cites two cases to support its argument, United States v. Cooper, 35 F.3d 1248 (8th Cir. 1994), reaffirmed by United States v. Cooper, 63 F.3d 761 (8th Cir. 1995), and United States v. Vivit, 214 F.3d 908 (7th Cir.

---

[1] In Carter, the Eighth Circuit declined to answer the defendant's ex post facto argument concerning the one-book rule because the defendant had waived his argument by not raising it earlier.  Carter, 490 F.3d at 644, 645-46.

2000).  In Cooper, the defendant was convicted of three firearm
offenses.  35 F.3d at 1249.  The district court applied the 1991
Guidelines, which had changed the grouping rules for multiple
firearm convictions, even though two of the convictions arose
from conduct prior to the adoption of the 1991 Guidelines.  Id.
The Eighth Circuit held the application of the 1991 Guidelines
did not violate the ex post facto clause because the defendant
was on notice of the increased penalty when he committed the
third firearms offense after the adoption of the new grouping
rules.  Id. at 1252.  The court carefully distinguished its prior
ex post facto Guidelines cases, noting the general rule was only
applied in single count cases or multiple count cases where the
offense conduct occurred in a single Guideline period and not to
cases that straddled a Guideline period where an amendment
occurred.  Id. at 1250.

     In Vivit, the defendant was convicted of sixteen counts of
mail fraud occurring over three years.  214 F.3d at 911-12.  The
district court grouped all sixteen counts for sentencing purposes
and applied a Guideline enhancement for use of minors in
committing the offense.  Id. at 913-14. The defendant argued this
enhancement did not apply because it has been adopted after the
mail fraud conduct involving minors had been completed.  Id. at
916.  The Seventh Circuit followed the Eighth Circuit's rule in
Cooper and held no ex post facto violation had occurred because
the grouping rules gave the defendant notice he could be
subjected to punishment for later occurring conduct.  Id. at 919.

2

On their face, these cases seem to hold that two offenses straddling a Guideline amendment should be sentenced under the newer version of the Guidelines.  However, both cases involved and heavily relied on different grouping provisions of the Guidelines.  <u>Cooper</u>, 35 F.3d at 1250; <u>Vivit</u>, 214 F.3d at 919.  However, under U.S. Sentencing Guidelines Manuel § 3D1.2(d), grouping of Cartier's exploitation charge in Count I may not be grouped with his receiving and possessing exploitative material.  Therefore, the logic that the defendant is on notice of the increased punishment because of the grouping provisions of the Guidelines is distinguishable from Cartier's case.  The Sentencing Commission has stated clearly that exploitation of minors under § 2G2.1 is to be treated individually.  Therefore, a violation of ex post facto would occur because Cartier was not on notice of the present day increased punishments when he committed individualized conduct in 2002.

Regarding the one-book rule, the Seventh Circuit noted, "The one-book rule expresses the intent of the Sentencing Commission that the Guidelines reflect a cohesive whole and the Commission's resistance to application of various Guidelines in a piecemeal fashion."  <u>Vivit</u>, 214 F.3d at 917.  The Seventh Circuit also noted that if an ex post facto violation has occurred, the one-book rule would require a universal application of the older version.  <u>Id.</u> at 917.  The Eighth Circuit has held a district court cannot apply specific section enhancements of a prior Guideline edition to a revised Guideline section under the one-

3

book rule.  See United States v. Ryder, 414 F.3d 908, 918 n.3
(8th Cir. 2005) ("In so doing, it appears that the district court
erroneously pulled the enhancement level from the 2000 Guidelines
and plugged it into the calculation made in the PSR using the
2002 Guidelines. . . .  When the district court determined to use
the 2000 Guidelines manual, it was required to use that version
in its entirety.  See USSG § 1B1.11(b) (Nov. 2000); . . .").  In
Cartier's case, the Court is addressing two different offense
groups, calculated under two different Guideline provisions.

     The Ninth Circuit has held that application of two Guideline
books is proper when the conduct is distinct and occurred at
different times to resolve ex post facto issues.  United States
v. Ortland, 109 F.3d 539, 546 (9th Cir. 1997).  That case also
involved many incidents of mail fraud occurring over a long
period of time.  Id. at 546.  Regarding Guidelines § 1B1.11(b),
the Ninth Circuit stated,

>     Application of the policy statement in this case
> would violate the Constitution; its application would
> cause Ortland's sentence on earlier, completed counts
> to be increased by a later Guideline. . . .  Moreover,
> the Commission's explanation is not entirely logical.
> The harm caused by the earlier offenses can be counted
> in sentencing the later one.  That does not mean that
> the punishment for the earlier offenses themselves can
> be increased, simply because the punishment for the
> later one can be.

Id. at 547 (citations omitted).  The Ninth Circuit created an
exception to the one-book rule in cases where the conduct is
distinct and occurred at different times for ex post facto.  Id.

The Court relies on the Ninth Circuit's opinion in <u>Ortland</u> and the advisory nature of the Guidelines post-<u>Booker</u> and applies the 2002 Guidelines to Count I and the 2006 Guidelines to the remaining counts.  Applying the 2002 Guidelines to Count I resolves the ex post facto issue while applying the 2006 Guidelines reflects Congress's intent in stiffer penalties for sexual offenses under the revised Guidelines and the PROTECT Act. This calculation leads the Court to a more reasonable sentence under 18 U.S.C. § 3553 than applying the rigid one-book rule.

If the Court had chosen to apply the 2002 Guidelines for all offenses, the Eighth Circuit has held the Court may consider post-conduct amendments in determining a post-<u>Booker</u>, reasonable sentence.  <u>United States v. Larrabee</u>, 436 F.3d 890, 893-94 (8th Cir. 2006).  In support of its logic, the court stated, "In assessing the reasonableness of Larrabee's sentence, we also find persuasive the amendments to the sentencing guidelines which became effective on November 1, 2004, subsequent to the date of Larrabee's offense. . . .  Here we do not apply the amended guidelines, but reference them because they are instructive as to the range of reasonableness."  <u>Id.</u>  Therefore, if this Court had applied the 2002 Guidelines, it may properly consider the enhancements made in sexual exploitation cases under <u>Booker</u> and 18 U.S.C. § 3553.  The Court notes that if it erred in applying two Guideline Manuals, it would have applied the same upward departures it has under the 2002 Guidelines and applied the rule from <u>Larrabee</u> to reach the same sentence it has imposed.

## II.  2002 and 2006 Calculation of Guidelines

The Court's application and calculation of these two different Guideline Manuals is discussed in part III of this memorandum.  In the event this Court has erred in applying two Manuals, it would have used these alternative guideline calculations in sentencing Cartier.

### 2002 Edition

**COUNT 1:**

| | | |
|---|---|---|
| Base offense level: | 27 | § 2G2.1(a) |
| Victim under Age 12: | +4 | § 2G2.1(b)(1)(A) |
| Legal Guardian: | +2 | § 2G2.1(b)(5) |
| Net: | 33 | |

**COUNT 2:**

| | | |
|---|---|---|
| Base offense level: | 17 | § 2G2.2(a)(1) |
| Victim under Age 12: | +2 | § 2G2.2(b)(2) |
| Receipt of Thing of Value: | +5 | § 2G2.2(b)(3)(B) |
| Depictions of Violence: | +4 | § 2G2.2(b)(4) |
| Use of Computer: | +2 | § 2G2.2(b)(6) |
| Net: | 30 | |

**COUNT 3:**

| | | |
|---|---|---|
| Base offense level: | 6 | § 2B1.1(a)(2) |

**COUNTS 4-11:**

| | | |
|---|---|---|
| Base offense level: | 17 | § 2G2.2(a)(1) |
| Victim under Age 12: | +2 | § 2G2.2(b)(2) |
| Receipt of Thing of Value: | +5 | § 2G2.2(b)(3)(B) |
| Depictions of Violence: | +4 | § 2G2.2(b)(4) |
| Use of Computer: | +2 | § 2G2.2(b)(6) |
| Net: | 30 | |

**COMBINED OFFENSE LEVEL: COUNTS 1, 2, & 4-11:**

Under § 3D1.4, Count 1 at level 33 is considered one group, and Counts 2 and 4-11 at level 30 are considered one group because they involve substantially the same harm.  § 3D1.2.  Count 1 is the base unit and assigned a level 33 because it is the greatest level.  § 3D1.4.  Counts 2 and 4-

11 are 3 levels less serious, so it is assigned 1 unit.
Therefore, 1 level is added because Counts 1, 2, and 4-11
are combined as 2 units.  Count 3 is disregarded because it
is 9 or more levels less serious.  § 3D1.4(c).

```
Base Level:              33   § 3D1.4
1½ Unit Addition:        +2   § 3D1.4(b)
Combined Offense Level:  35
Accept Responsibility:   -3   § 3E1.1(a)
Net:                     32

Incarceration:           121-151 months
Fine:                    $17,500-$750,000
```

**2006 Edition**

**COUNT 1:**

```
Base offense level:      32   § 2G2.1(a)
Victim under Age 12:     +4   § 2G2.1(b)(1)(A)
Sexual Act:              +2   § 2G2.1(b)(2)(A)
Depiction of Violence:   +4   § 2G2.1(b)(4)
Legal Guardian:          +2   § 2G2.1(b)(5)
Net:                     44
```

**COUNT 2:**

```
Base offense level:      18   § 2G2.2(a)(1)
Victim under Age 12:     +2   § 2G2.2(b)(2)
Receipt of Thing of Value: +5 § 2G2.2(b)(3)(B)
Depictions of Violence:  +4   § 2G2.2(b)(4)
Use of Computer:         +2   § 2G2.2(b)(6)
600 or More Images:      +5   § 2G2.2(b)(7)
Net:                     36
```

**COUNT 3:**

```
Base offense level:      6    § 2B1.1(a)(2)
```

**COUNTS 4-11:**

```
Base offense level:      22   § 2G2.2(a)(2)
Victim under Age 12:     +2   § 2G2.2(b)(2)
Receipt of Thing of Value: +5 § 2G2.2(b)(3)(B)
Depictions of Violence:  +4   § 2G2.2(b)(4)
Use of Computer:         +2   § 2G2.2(b)(6)
600 or More Images:      +5   § 2G2.2(b)(7)
Net:                     40
```

**COMBINED OFFENSE LEVEL: COUNTS 1, 2, & 4-11:**

Under § 3D1.4, Count 1 at level 44 is considered a group and the base unit.  Counts 2 and 4-11 are considered one group because they involve substantially the same harm. § 3D1.2.  Group 2 is 4 levels less serious, so it is assigned one unit.  Therefore, 2 levels are added because Counts 1, 2, and 4-11 are combined as 2 units.  Count 3 is disregarded because it is 9 or more levels less serious.  § 3D1.4(c).

| | | |
|---|---|---|
| Base Level: | 44 | § 3D1.4 |
| 1½ Unit Addition: | +2 | § 3D1.4(b) |
| Combined Offense Level: | 46 | |
| Accept Responsibility: | -3 | § 3E1.1(a) |
| Net: | 43 | |
| | | |
| Incarceration: | Life | |
| Fine: | $25,000-$250,000 | |

## III. Findings of Fact

This part explains the actual calculation the Court used for sentencing Cartier.  All calculations are based on the 2006 Guidelines Manual except for Count 1.  Cartier is a criminal history category I.

### A.   Guideline Calculation

**COUNT 1: (2002 ed.)**

| | | |
|---|---|---|
| Base offense level: | 27 | § 2G2.1(a) |

| | | |
|---|---|---|
| Victim Under Age 12: | +4 | § 2G2.1(b)(1)(A) |

- The victim's date of birth is June 24, 1991.  The conduct charged occurred between 2000 and 2002.  This puts the victim's age at under age 12.

| | | |
|---|---|---|
| Legal Guardian: | +2 | § 2G2.1(b)(5) |

- Neither party disputes Cartier was the victim's guardian at the time of the relevant conduct.  He was and still is married to the victim's mother.

**Net:**                              **33**

**COUNT 2:**

Base offense level:          18    § 2G2.2(a)(1)

Victim under Age 12:         +2    § 2G2.2(b)(2)
- The Court has viewed a DVD containing representative samples of the pornography taken from the Defendant's property.  The images clearly show children under the age of 12.  The file names of the documents also suggest victims under the age of 12.

Receipt of Thing of Value:   +5    § 2G2.2(b)(3)(B)
- <u>United States v. Griffin</u>, 482 F.3d 1008, 1013 (8th Cir. 2007).
- Cartier argues this case is distinguishable because he used Edonkey software, not Kazaa, and because he may not have known that he was sharing images.  The Court disagrees.  <u>Griffin</u> is indistinguishable from the facts of this case.  Cartier is experienced with computers.  In his statements to the investigating officers, Cartier admitted to downloading images using a peer-to-peer file sharing program, sharing pornographic images on his computer, categorizing pictures and files on his computers, and trading images, all for the purpose of receiving pornographic images.  Cartier knew that by sharing files, he would receive files.  This meets the <u>Griffin</u> standard for § 2G2.2(b)(3)(B).

Depictions of Violence:      +4    § 2G2.2(b)(4)
- The Court has viewed a DVD containing representative samples of the pornography taken from the Defendant's property.  The images clearly show children being submitted to bondage and being penetrated by various adult sex toys.  This meets the standard of § 2G2.2(b)(4).

Use of Computer:             +2    § 2G2.2(b)(6)
- Cartier used many computers and electronic storage devices for the purposes of downloading, sharing, trading, and storing child pornography.

600 or More Images:          +5    § 2G2.2(b)(7)
- The parties agree Cartier possessed roughly 1 million images and 4,000 videos depicting child pornography.

Net:                         36

**COUNT 3:**

Base offense level:          6    § 2B1.1(a)(2)

**COUNTS 4-11:**

| | | |
|---|---|---|
| Base offense level: | 22 | § 2G2.2(a)(2) |
| Victim under Age 12: | +2 | § 2G2.2(b)(2) |
| Receipt of Thing of Value: | +5 | § 2G2.2(b)(3)(B) |
| Depictions of Violence: | +4 | § 2G2.2(b)(4) |
| Use of Computer: | +2 | § 2G2.2(b)(6) |
| 600 or More Images: | +5 | § 2G2.2(b)(7) |
| Net: | 40 | |

• The Court applies the same factual findings for Counts 4-11 as it did for Count 2.

**COMBINED OFFENSE LEVEL: COUNTS 1, 2, & 4-11:**

Under § 3D1.4, Count 1 at level 33 is considered one group, and Counts 2 at level 36 and 4-11 at level 40 are considered one group because they involve substantially the same harm. § 3D1.2. Counts 2 and 4-11 is the base unit and assigned a level 40 because it is the greatest level. § 3D1.4. Count 1 is 7 levels less serious, so it is assigned a one-half unit. Therefore, 1 level is added because Counts 1, 2, and 4-11 are combined as 1½ units. Count 3 is disregarded because it is 9 or more levels less serious. § 3D1.4(c).

| | | |
|---|---|---|
| Base Level: | 40 | § 3D1.4 |
| 1½ Unit Addition: | +1 | § 3D1.4(b) |
| Combined Offense Level: | 41 | |
| Accept Responsibility: | -3 | § 3E1.1(a) |
| Net: | 38 | |

| | |
|---|---|
| Incarceration: | 235-293 months |
| Sup. Release: | 5 years - life |
| Fine: | $25,000-$250,000 |
| Special Assessment: | $1,100 |

**B.    Departures**

Downward Departure:  No grounds have been presented for the Court to consider a downward departure.

Upward Departure:  Both the 2002 and 2006 Guidelines allow for upward departures under chapter 5K2.  The Government suggests an upward departure under § 5K2.0(a)(3) because the Guidelines do

not adequately take into account the number of images.  The Court
agrees.  The fact that Cartier possessed 1 million images and
4,000 videos of children being exploited is mind-boggling.  The
Guidelines stop counting after 600 images, showing how dramatic
having even that number of images is.  The Government suggests
this case is the largest child pornography case ever prosecuted
in this district and perhaps the largest in this region.  These
facts justify an upward departure to properly reflect the gravity
of the case.

Guideline § 5K2.3 allows for an upward departure where the
victim suffers extreme psychological injury.  While no expert
testimony has been presented, the Court heard from the mother of
the victim in the Presentence Investigation Report and at the
sentencing hearing.  The child victim in this case will have to
live with the pain and psychological injury inflicted by her own
step-father for the rest of her life.  This abuse of trust easily
amounts to so deep a cut that she will be haunted for the rest of
her life.  This breach of parental trust owing to the child can
be recognized by any parent or grandparent as having a lasting,
horrible psychological affect on the child.

Finally, Guideline § 5K2.8 allows for an upward departure
for extreme conduct.  Extreme conduct is conduct that is
"unusually heinous, cruel, brutal, or degrading."  Cartier's
assault of his own step-daughter shows a complete disregard for
her welfare.  His actions were heinous, cruel, degrading,
repulsive, and disgusting.  Furthermore, the sampling of images

11

presented to the Court is also repulsive and disgusting, showing children of all ages being brutalized repeatedly.  The number of victims in this case is easily in the thousands.

These three departure guidelines justify an upward departure of four levels bringing Cartier's offense conduct to a level 42, with a sentencing range of 360 months to life.

### C.   Variance

The Defendant argues he is entitled to a variance under 18 U.S.C. § 3553(a).  The Court has considered these factors and concludes the Defendant is entitled to no variance considering the gravity of his offense.

## IV.  Sentence Imposed

Cartier is sentenced to 360 months incarceration.  The Court recommends to the Bureau of Prisons that Cartier be designated to serve his sentence at the Federal Correctional Institution ("FCI") in Butner, North Carolina, or the Federal Medical Center ("FMC") in Devens, Massachusetts, so Cartier may be afforded all available sexual offender treatment.  Although the Court recommended FCI Butner at sentencing, the Probation Office has informed the Court that sexual offender treatment is moving to FMC Devens.  At the completion of his term of incarceration,

Cartier is placed on supervised release for the duration of his life.  All standard conditions of probation shall apply.

Dated this 13th day of September, 2007.


RODNEY S. WEBB, District Judge
United States District Court